### THE PEOPLE v. SAMUEL DRURY.

A party arrested on a warrant issued on a criminal charge has a right to have a preliminary examination before the magistrate issuing the warrant, of which he cannot be deprived by the finding of an indictment before the examination is completed.

THE defendant was arrested on a warrant issued by a police justice, on a charge of an attempt to murder.

While the examination on that charge was proceeding before the magistrate, and before it was completed, an indictment was preferred against him for the same offense, and he was arrested on a bench warrant issued on that indictment.

He sued out a writ of habeas corpus, and on its return claimed a discharge from the arrest on the bench warrant, because the examination had not been finished, and because he was in custody on that complaint.

*H. F. Clark*, for defendant.

*District Attorney, contra*, insisted that the grand jury had a right to indict without awaiting the completion of the examination, and their indictment operated, of itself, as a supersedeas.

*Edmonds, J. :* The question presented on the return of the writs of habeas corpus is whether the defendants, being arrested on a warrant by a committing magistrate on a criminal charge, can be deprived of the benefit of the examination provided by the statute, by being indicted before such examination can be completed.

The original object of requiring the magistrates to make and return in writing their examination in such cases, was to prevent them from discharging, through favoritism, or otherwise improperly, a person brought before them charged with crime, and as they were obliged, and are yet, to return all such examinations and all recognizances to the next Oyer and Terminer, "so that the justices of the people may proceed thereon," their deportment in office could thus be reviewed, and their errors corrected by the superior court of criminal jurisdiction in process of time. A further object was had in view and was attained; the superior court, by a perusal of such examination, could be aided in determining the question of bail.

As the practice was continued, it was seen that these examinations were productive of good in other respects, inasmuch as the parties accused were often able to give such explanations in the first instance as demonstrated their innocence in the very beginning of the charge against them.

To secure these various advantages, our statute has enacted that in all cases where a party is arrested on a warrant issued by a magistrate on a charge for any offense, an examination shall be had before him or such other magistrate as the prisoner may be lawfully taken before. Such examination must be of the complainant and the witnesses in support of the prosecution on oath, and must be in the presence of the prisoner.

The prisoner also shall be examined, though not on oath, and for that purpose he shall be informed of the charge against him, and be allowed a reasonable time to send for and advise with counsel, and on his request his counsel may be present at the examination of the witnesses, as well as the prisoner. After his examination, his witnesses, if he have any, *shall* be sworn and examined, and he may have the assistance of his counsel on such examination also. All these examinations are to be reduced to writing, and be signed. If, upon such examination, it appear that no offense has been committed, or that there is not probable cause for charging the pris-

oner, the magistrate shall discharge him. (2 Rev. Stat. 702, · title 2.)

The statute provides, still farther, that though the magistrate may not deem it expedient to examine the prisoner, he shall examine him when required by the prisoner. And all the examinations and recognizances shall be certified and returned to the court, at which the witnesses may be bound to appear, and if the magistrate neglect to do so, he may be punished as for a contempt. (2 R. S. 709, §§ 22, 26, 27.)

From these provisions it is manifest that something more is aimed at than merely detaining a prisoner in custody, or submitting the magistrate's proceedings to a proper *surveillance.* The demonstration of the prisoner's innocence is also in view, and it is his protection which is also aimed at.

And it would be just as improper for a magistrate to omit the examination of the prisoner or his witnesses, when thereby his innocence might be established, as it would be to omit the examination of witnesses whose testimony might tend to establish his guilt.

This is manifest also from another consideration.

Formerly grand jurors might be challenged by a prisoner for want of any of the required qualifications. But now, by our statutes, any person held to answer a criminal charge may challenge, as grand juror, the prosecutor or complainant on the charge, or any person held or bound by recognizance as a witness. A challenge to the array, or any individual juror, cannot now be made for any other cause. (2 R. S. 724, §§ 27, 28.) While this is intended for the protection of the accused, it is evident that the right thus secured to him will be very imperfectly enjoyed unless he shall be informed who is his accuser, and who those are by whose oaths he is held to answer the charge against him.

. This information he is certain to obtain from an examination conducted in the manner already mentioned. If, after an arrest on a criminal charge, the prisoner can be indicted before an examination be concluded as provided in the statute, the superior court of criminal jurisdiction will be in a meas-

ure deprived of its salutary supervision over committing magistrates — the prisoner be deprived of the only opportunity which our law gives him of making a personal explanation — be deprived of the invaluable right secured to him by our laws, of confronting his accuser — of the privilege of knowing who are the witnesses against him — and, above all, of the opportunity of demonstrating, by his own witnesses, his innocence, at the very onset of the proceedings against him. He will also be deprived of the assistance of counsel in the preliminary proceedings, and of his right to challenge the grand jury.

In a word, he may be deprived of all the protection which the statute has provided for him in the beginning of the charge against him, against a false accusation, which may affect his life, liberty, and character.

It is true, as was suggested on the argument, that a person may be indicted in the first instance without any preliminary arrest, and thus by the action of a grand jury suffer the same consequences.

The answer to this is palpable, and that is, that the statute has provided this protection, and established these safeguards, only in case of a preliminary arrest, and has not provided them in case that an indictment be the first step, trusting, doubtless, the character and liberty of the citizen to the good sense and sound discrimination of the grand inquest of the country, as a substitute for the examination required in other cases. In other words, the legislature have not deemed it necessary to throw around the action of the Grand Jury the same safeguards which it has been so careful to establish around the action of the police justices. But this omission furnishes no reason why the safeguards which have been established in the case of preliminary arrest, shall be overthrown and be utterly disregarded.

To secure this right, and to prevent its exercise from being injurious, the law has farther provided that in these preliminary examinations by the committing magistrate he has no right to detain a prisoner for examination for a longer period

than three days, unless under extraordinary circumstances. (1 Hale's Pleas of the Crown, 585; 1 id. 120.) In one case, a magistrate was held liable in an action for false imprisonment, who detained a prisoner nineteen days for examination. (Cro. Eliz. 829.) Obedience to this law would produce prompt and speedy action on complaints for crimes, and need in no instance delay the action of the grand jury an unreasonable time.

Thus has the law wisely provided an opportunity for an accused party to demonstrate his innocence on the onset, while it has provided sure means for his detention and for prompt action on the charge against him, if there is probable cause to believe him guilty.

The remaining question is, how is this law to be enforced? I can discover only one mode, and that is by holding an indictment to be irregular and void, which is thus obtained in fraud of the law. It would be the duty of a court, where it may be pending, to quash it, and equally my duty here to disregard it; so that an examination may be had as provided by law.

I have not arrived at this conclusion without much consideration, and only after consultation with the presiding judge of the Court of Sessions. That experienced officer agrees with me in opinion, and that I am bound to regard these prisoners as if they were now only detained on the original complaint.

Under this view of the case, I must hold that the prisoners are entitled to be discharged from the commitments of the General Sessions, and that they are properly detained on the original commitments issued by the police justice, who may proceed without delay with the examination which the law requires.

The question of admitting the prisoners to bail cannot well be determined until the examination shall be completed, as that is essential to that end.